Good morning, Your Honors. John Johnson, representing Ventura Group Ventures. Every time I come to an oral argument, I really want to add something that's not in the briefs. And for once, I think there's a chance to do it because there's been so many cases coming down right and left from the Supreme Court affecting takings. So, you know, it's a it's it's a fascinating subject. But the funny thing is, after getting the notice for the oral argument, is I got hung up with Justice Harlins. It was in the Hans case, the Hans versus Louisiana case. Justice Harlins, a concurring opinion, which basically he says, I concur in the result, in the judgment that citizens of the one state are prohibited from suing their own state in federal court. But he goes on to say that, but I don't like a whole lot of things the majority opinion says. And particularly, I don't like the criticism they gave the Chisholm case. I think the Chisholm case was properly decided based on the Constitution as it was written then. And the implication that I first got from that statement was, well, he must think the majority's decision is consistent with the Constitution as it was written in 1890 when they were deciding that case. That led me to, well, what changed between 1793 and 1890 that bore on that issue? And others were the Civil War and the 14th Amendment. And surprisingly, I went back and looked through cases to see if the 14th Amendment was even considered in Hans. It's not mentioned. But I think what Justice Harlins was saying, in a kind of cryptic way, was if we look at the 11th Amendment as it was written, which clearly, on its face, says it only prohibits suits against the state by citizens of another state, that's the very type of denial of privileges and equal protection that the 14th Amendment now says is unconstitutional. You can't do it. So one way of resolving the thing is, well, they meant to say both. You can't sue a state for anything. And that's why he concurred in that opinion. Interestingly enough, he then writes the majority. He writes the majority. There was only one deciding vote in Chicago-Burlington, which is, of course, the case we we think is controlling, or the Williamson County and the cases that have flowed from that. And there he makes it very clear. Same type of reasoning. He finds that the right to be compensated for the taking of private property for public use predates the Constitution. I mean, this is just a fundamental right that every sovereign has to abide by. And as we point out in our brief, you know, if you analyze the whole situation from Chicago-Burlington, the courts, the federal bench has carefully protected the legitimate interests of the states by requiring, all they need to do is provide a remedy that will provide just compensation. They can't stop the taking. They just need to provide a remedy that will get the person just compensation. We started this suit to get just compensation against, not the state of California, the Port District, Ventura Port District. In fact, this suit was actually started in 1984. I've been involved with it since 1987. Excuse me, counsel, may I interrupt you just one? Who does the Ventura group suggest took its property? The vote is in order for Proposition 13. Who took the property? I think under the analysis is the property was taken first by the Ventura Port District when they took our 50-year lease in bad faith. We tried that. There's a remedy for that afforded under state law. We went through that remedy. We got a judgment. We tried to collect on the judgment. They filed bankruptcy. And you got about $7 million or so. $7 million didn't even cover the interest accrued on the judgment at that point in time. And then we had, out of the bankruptcy court, the right to try our so-called tax appeal before this court, not this panel, but in the Ninth Circuit, and to get a finding as to whether or not Article 13A of the Proposition 13, for more common use, prohibited the levy of taxes to pay this judgment. Now, we're still now proceeding with the remedy to get just compensation. And our position, the case was removed to federal court. We didn't file first in the federal court. FDIC brought us here. Then we, before the Ninth Circuit, I think it was in June 9, 1999, a different panel, they certified the questions as to state law on the taxing issues to the California Supreme Court. California Supreme Court comes back and says, as we construe the state statutes, not even Prop 13, the state prohibits a levy of taxes to pay this type of judgment. And at that point, those, and they went on to make certain comments. The one we were particularly upset with was, which is I think one of the focal issues in this case, the comment about Fifth Amendment taking cannot occur as a result of a bankruptcy. Chapter 9 discharger, however it was put. But the... Maybe you could answer a procedural question for me. Your client currently has outstanding, a partially satisfied judgment. And why wouldn't your client be able to receive installment payments over the course of however long it would take, given the response by the California Supreme Court that the Port District can't raise the taxes in order to pay the full amount of the judgment all at once? Or does the intervening bankruptcy simply discharge any... I thought you had received a permission from the bankruptcy court to proceed with your enforcement action. No, Your Honor. The liability on the judgment was completely discharged. Only reservation was, if taxes could be levied, they would levy the taxes and pay the balance. All right. So is there no provision in the law to allow installment payments? They... Under the law, you go to the writ of mandate, there is a provision where they can ask for installment payments. They deliberately did not ask for installment payments because they couldn't demonstrate insolvency to get into Chapter 9. And that's the bind we are stuck in. I see your predicament. I don't understand. If the Port District actually has to file bankruptcy because its liabilities exceed its assets, doesn't that definitively answer the question as to whether they ought to ask? I mean, you can't get a writ of mandamus from a California Superior Court judge telling the Port District that they have to pay it in installments? No. No. Once they qualified for bankruptcy, which they do, as soon as... That's what the last... The case against the District, what it essentially established was, look, California has the power to regulate their local entities as far as what taxes they can levy. They have the power to say, you cannot levy taxes to pay this judgment. That's over and done with. We're not challenging that decision. And I take it there are no other assets that have otherwise not been discharged through the bankruptcy remaining that you can attach? Correct, Your Honor. So at the end of the remedy, the remedy that California affords us for the taking, we're about $20 million short. And... The case with Rooker-Feldman and all these other things wound in here, once we get that decision from the California Supreme Court, now, we started thinking Rooker-Feldman right then, because we were making two arguments which were outcome determinative, which could have avoided it, could have had a federal court rule that you can't enforce Prop 13 in this fashion, and we would have then been able to recover against the Port District. And that was our guarantee clause argument and due process procedural argument, which are very simple. You cannot delegate in a Republican form of government that respects due process the decision as to what judgments are going to be paid in full and which are not to the local taxpayers who have to pay them. But we can't revisit, I mean, aren't you... No, no, I'm not asking you, I'm just saying, these are the issues we had to raise under Rooker-Feldman. Yes, I understand that, but you're not, I mean, we can't revisit that. Oh, no, and we're not asking you to. Mr. Johnson, what, in your view, would this court need to do in order for you to make the recovery that you want to make? What would be our ruling? One, two, three. One, we have a direct cause of action for the taking under the Fifth Amendment, and if not, which I think that's the one it has to be, if not, for purposes of this case, a stake is a person under 42 of 1983. You know, that's... And, of course, you know, right now, the only argument I see being advanced by the state before this court, if you want everything else to go back to the trial court, is the Eleventh Amendment issue. And on that issue, I think Chicago Burden and everything down the line there has been... Let me put it this way. If they had not... If the California Supreme Court had limited their discussion to California law, as the Ninth Circuit basically asked them to do, had none of this other language in there about what bankruptcy courts do and what they don't do, and whether it could be a taking, a discharge, I would agree with the state that, well, let me not go that far. I would think they'd have a good argument that we should go to California court first, litigated in that system, to go to the United States Supreme Court. But within all of that language in there, and this court's decision, Washington Legal Foundation, firm and brown by the Supreme Court, you know, it's futile. Why go to California to find something when they clearly told us what they're going to do? And as we point out in our brief, there's cases that we could be sanctioned for even asking for the relief. On the 11th Amendment issue, the Supreme Court has established state sovereign immunity may be abrogated under three instances. This is not one of them. So how can we hold consistent with that doctrine that the sovereign immunity of the state is abrogated under a Fifth Amendment taking place? It was, I'm not necessarily asking you to say it was abrogated, it was waived when the states, or abrogated when the states ratified the 14th Amendment. You know, and that's, if I could go back to my Justice Harlan thing, because, you know, it gets quite fascinating. Because, you know, after Hans versus Louisiana, he writes the majority in Chicago Burlington, and then you get to ex parte Young. And he dissents. Now this is the first time I find the 11th Amendment and 14th Amendment being discussed together. And Justice Harlan dissents in that case. And the basis for it, his basic dissent is, no, they've got to bring all cases in state court first, and go have them reviewed by the United States Supreme Court.  The abrogation of the 11th Amendment. You say the 14th Amendment does away with the 11th Amendment, is that your argument? As to taking claim where the taking remedy of just compensation is required, absolutely. All right, and what is your authority for that? Right now it's the footnote in First English. All right. And none of these recent cases really get to that issue. So they have a lot to say about, you know, some of the side events that are going on in this case. But, you know, this is really the first case where that issue is going to have to be decided. I think it's a very important case. Yes, it is. Do you want to reserve some time? Yes, I would, Your Honor. Thank you. Thank you, Mr. Johnson. Ms. Pham? May it please the Court, Dominique Pham, Deputy Attorney General representing the State of California. Justice Nelson correctly observed when she asked who took the property. Certainly not the State. Appellant here is trying to equate... A little louder, please. Sorry. It's not a microphone. It's a recording machine. Appellant is trying to equate payment of judgment with just compensation. And even Appellant's own admission showed that the judgment was against a separate local entity for a breach of contract claim in a prior action which the State was not a party of, with the exception of the bankruptcy proceeding when the State appeared as a creditor. What Appellant is seeking is a constitutional right to full payment of this judgment found on a breach of contract claim. And Appellant goes on about cases for the broad proposition that State sovereignty is abrogated and the 14th Amendment abrogation right of Congress. But what these cases stand for, including Chicago Burlington, is that the takings clause of the Fifth Amendment applies to the State through the 14th Amendment. That's it. That is not in dispute here. What the State comes here with is case law in the Ninth Circuit on point saying that there is no direct action. A party claiming a constitutional violation must go through Section 1983. That is the exclusive remedy provided by Congress pursuant to his 14th Amendment power. Let me ask you about that. If that's the exclusive remedy, but there's no way for the plaintiff to proceed under 1983 in this case. Yes. With the facts of this case, the exclusive remedy exists as a general application. But that is no different than saying that this Appellant loses because the State has valid defenses. Just like the Ninth Circuit Court cases in Agile Pacific and Bank of Lake Tahoe that were cited in our brief, the Court said that no direct action exists. The plaintiff must go through Section 1983. However, the plaintiff in Agile was prevented from doing so because of statute of limitations. And then in Bank of Lake Tahoe, again, the Court considered the constitutional claims to be under Section 1983 and the plaintiff didn't have the remedy because the State defendants were not persons under Section 1983, statutory language. Then why shouldn't we apply first English in this case, as suggested by Appellant? Because that was a footnote, as the Court pointed out. That's not directly on point. And the Ninth Circuit has said no direct action. The facts of this case are not so compelling as to require the Court to go outside of what Congress has already provided as the exclusive remedy to seek vindication of constitutional rights. Ms. Pham, what is your bottom line for this Court, in your view? The bottom line, Your Honor, is the State is immune under the Eleventh Amendment to the Section 1983 claim. The State is immune because it is not a person. The State is not liable. Furthermore, under the Rooker-Feldman Doctrine, these Federal constitutional claims have been raised previously in the prior action. They were raised to the California Supreme Court. The California Supreme Court decision was adopted by the Ninth Circuit in the prior action. And Appellant had an opportunity to appeal these claims to the United States Supreme Court, which denied cert in 2002. The claim now, in its mutated form, re-characterized as a takings claim against the State without any legitimate reason, is not correct. And the State should not be liable. Appellant did not file its complaint pursuant to Section 1983. It doesn't have a direct claim. It doesn't have a direct action. This case should end here. Well, let me go back to First English. In that case, the Supreme Court rejected the argument that sovereign immunity bars a Fifth Amendment claim. So does that mean then you can have a Fifth Amendment claim in the Federal courts? I'm sorry. No. Well, does it mean that by enacting the Fifth Amendment, Congress waived sovereign immunity at least as to the Federal Government? At least to the Federal Government. The Fifth Amendment is applied to the States through the Fourteenth Amendment. Congress has power to abrogate sovereign immunity Here, Congress has done so by instituting, by specifically providing Section 1983 as a remedy for any constitutional violations under color law. In reality, there is no remedy if you say the State is not a person. But that doesn't negate the remedy in general application a plaintiff in a typical takings case has the remedy of prospective injunctive relief to stop the alleged constitutional violation. So is that what would be appropriate here? Prospective injunctive relief? No. It's not available here for this particular plaintiff, but that doesn't negate the fact that there is a remedy provided for by Congress. Just in this case, this appellant doesn't have any response to the State's defenses, valid defenses, as provided by law. State's not a person. State is immune. And that's it. So the State can go and take property assuming we know who took the property in this case. Assuming the State took the property, it would be immune from any suit at any time? Again, Your Honor, no, that's not so. A plaintiff in a typical takings case could ask for an injunctive relief to stop the, whatever the regulatory taking or whatever taking is being alleged. There are remedies available as provided by Congress. The remedies available to this particular plaintiff were not used. And so at this point, the State is using its defenses appropriately. And that's not saying that, in general, when Congress specifically provided Section 1983, it immunizes the State totally. I guess I understand your answer. You say, yes, there are remedies, but there are no remedies in this case. There are remedies in general application. But not to this specific case. No possibility of prospective injunctive relief. Because that shows how faulty this claim is. It can't point to any State officials acting under color of law to deprive of any property. As I mentioned previously, and as an appellant pointed out, the judgment was found on a breach of contract, and it was discharged in bankruptcy. Right now, the appellant is trying to recover the amount that was discharged, and the California Supreme Court has even analyzed this and said, that couldn't be a taking. So for this particular plaintiff, no, Your Honor, there are no remedies. Thank you. Let me come at it from Judge Nelson's question from a slightly different point of view. Had the State actively been involved in the taking, let's assume for the purpose of my hypothetical question, that the Port District was a creature of the State, a State agency. I take it there are provisions in the California, probably government code, for lawsuits against the State, or a State agency for condemnation and just compensation. Am I correct? Yes, Your Honor. Okay. But the defense here is, it wasn't the State that took the property, it was a Port District, which is not an agency of the State. And whatever remedies the State, or the plaintiff had, it was against that entity. And now the State is asserting its legitimate defense, which has never been waived. It is still enjoying sovereign immunity under the 11th to an action to indemnify the Port District. Is that a fair characterization of your response? Absolutely. Okay. Yes, Your Honor. That actually helped me. Thank you, Ms. It is one of the points that were raised in the briefings below, in which the Port District was a separate distinct entity from the State. And the State does have a remedial scheme for inverse condemnation for a takings case. Rid a mandate was one of the options discussed that would be provided to a plaintiff in a typical takings case to recover judgment. The State is subject to its Tort Claims Act. A plaintiff could file a claim with the State, asking for just compensation. So it's not as if nothing exists in this vacuum. There are remedies out there, just not here in this particular case. What about the somewhat novel argument regarding the 11th and the 14th Amendments and their relationship to each other that was suggested by Mr. Johnson in his initial presentation? The 11th Amendment was passed in response to the Chisholm v. Georgia. States were States did not want to waive its sovereignty by any act of ratification. And ratifying the convention does not mean States absolutely give up everything. The States are not immune to suits in Federal courts by other States, by the United States. However, Hans has said with respect to citizens of its own citizens, the State has not waived its immunity in Federal courts. The 14th Amendment was passed, allowing Congress to specifically abrogate the sovereign immunity in areas in which Congress has the power to enforce, to implement and enforce laws to protect certain rights conferred by other constitutional amendments. Here, Congress has done so by saying the Fifth Amendment Takings Clause applies, but Congress also provides a vehicle for doing so. And what appellant is asking the Court to do is to carve out a separate remedy in addition to that exclusive remedy that Congress has done so and has refused to change to allow States to be sued as persons. Unless the Court has any questions, I will submit. Thank you. Just briefly. I always say that. The California Supreme Court went much further than just addressing our case. What they say is for any, by overruling the F&L Farms case, they say taxes can't be levied to pay any inverse condemnation judgment rendered under State law. What they have done is they have set up a system where you go to use the State remedy and, incidentally, you can't get prospective relief to prohibit a taking. I mean, that's the fundamental principle that flows from Williamson County going back to Chicago Burlington. It's not available. You can't bring an ex parte young type action to restrain a taking. You can bring it to restrain a violation of the guarantee clause, violation of the procedural due process clause, but not to prevent a taking. There is no prospective relief available anywhere in this country in federal court to prevent a taking. All you're entitled to is just compensation and you've got to go to the State remedies first. The State remedy we have here is you can go get a judgment, spend a lot of years getting a judgment, but every district budgets on a budget for what they have now, so they get a judgment for inverse condemnation. They don't have to raise taxes. They just keep their same budget in place and go down to Chapter 9. And the person doesn't... But Mr. Johnson, how is that different from the risk that any civil litigant takes when it goes after a judgment debtor that doesn't have sufficient assets to pay the judgment? It does seem to me, if I understood Ms. Fong's argument, that what this really comes down to is an attempt, and I can certainly understand why, I'm not criticizing the plaintiffs at all, to try and make themselves whole where the Port District was unable or escaped the $20 million through bankruptcy to do so. You're now turning to the State saying we want you to indemnify the balance here. Well, Your Honor, the difference is if you're dealing with a private judgment creditor, you enter into a business arrangement with them of some sort. Private businesses accumulate assets that are subject to execution. You can evaluate their credit beforehand. You may come to a point where they go into bankruptcy, the debt is discharged, and the judgment creditor is simply left with an unsatisfied judgment that in this case you got, what, 40 cents on the dollar or less than that. But, I mean, I just don't see how that's any different from a parallel situation in private commercial or tort litigation. Well, when it results in private property ending up in the hands of the government, I think the Fifth Amendment makes it very different, and you know, that is the basic problem. So you're saying that property was basically taken by the government, not by a private entity in this case. It was taken, yeah, it was taken by the government, and, you know, we proceeded with the remedies State afforded us, and we've come up short. And I think the obligation is clearly on the States under Chicago Burlington, Williamson County, to make sure that remedy is there. If it's not there, the State is liable. So you really do, you really are asking for indemnification. No, I don't look at it as indemnification for anybody. I look at it, we're asking that the balance of just compensation be paid because the State caused it not to be paid. You know, this argument You say the State, but it's the Port District that took itself into bankruptcy and escaped the obligation to pay. The State allows them to. You know, the Federal Government allows the Port District to file bankruptcy. Only with the consent of the State. And once they've filed bankruptcy, the bankruptcy court has to apply State law as to what assets can be sold. So now the State is in complete control as to whether a judgment is going to be paid or not. And they can you know, their argument is the bankruptcy court is the one that took the balance of the judgment. Not State law. No, State law took it because they exercised their power over fiscal control of their local entities to say you're not going to pay inverse condemnation judgments. And with that, Your Honor, I would submit unless the Court has questions. I think that's it, Mr. Johnson. Thank you very much. The case just argued is submitted. And that concludes our calendar for this morning. We'll be in adjournment until 9 o'clock tomorrow morning. I'll rise before the discussion stands adjourned. Thank you.
judges: Farris, D.W. Nelson, Tallman